1

2   AMENDED on 10/4/12

3   (to include exhibits)

4

5

6

7

8

9             UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
                   SOUTHERN DIVISION

10

11  FEDERAL TRADE COMMISSION,          Case No.
                                       SACV12-01561 DOC (JPRx)
12              Plaintiff,
                                          AMENDED
13         v.                          PRELIMINARY INJUNCTION WITH
                                       ASSET FREEZE, APPOINTMENT
14  AMERICAN MORTGAGE                  OF TEMPORARY RECEIVER, AND
    CONSULTING GROUP, LLC, a           OTHER EQUITABLE RELIEF
15  California Limited Liability Company,
    also d.b.a. American Mortgage Group and  Date:      October 1, 2012
16  American Mortgage Consulting;      Time:      8:30 a.m.
                                       Place:     Courtroom 9D, the
17  HOME GUARDIAN MANAGEMENT                      Honorable Judge
    SOLUTIONS, LLC, a California Limited          David O. Carter
18  Liability Company, also d.b.a. Home
    Guardian Solutions; and
19
    MARK NAGY ATALLA, d.b.a. Home
20  Guardian Solutions, Home G Solutions
    Firm, and Home G Solutions Group,
21
                Defendants.
22

23        Plaintiff Federal Trade Commission ("FTC"), pursuant to Sections 13(b) and 19

24  of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the

25  2009 Omnibus Appropriations Act, Pub. L. No. 111-8, § 626, 123 Stat. 524, 678 (Mar.

26  11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability

27  Responsibility and Disclosure Act of 2009, Pub. L. No. 111-24, § 511, 123 Stat. 1734,

28  1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall

**PRELIMINARY INJUNCTION - Page 1**

Street Reform and Consumer Financial Protection Act, Pub. L. No. 111-203, § 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538, filed its Complaint for Permanent Injunction and Other Equitable Relief; an *Ex Parte* Application for Temporary Restraining Order and Other Equitable Relief, including an order to show cause why this Court should not enter a preliminary injunction enjoining the violations of law alleged in the FTC's Complaint, continuing the freeze of their assets, and imposing such additional relief as may be appropriate; and a supporting memorandum ("Memorandum of Points and Authorities in Support of Plaintiff's *Ex Parte* Application for Temporary Restraining Order with Asset Freeze and Other Equitable Relief and Order to Show Cause"), on September 18, 2012, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

On September 18, 2012, this Court granted Plaintiff's *Ex Parte* Application for a Temporary Restraining Order and entered a Temporary Restraining Order ("TRO") with an Order to Show Cause Why a Preliminary Injunction Should Not Issue against Defendants American Mortgage Consulting Group, LLC ("AMC"), Home Guardian Management Solutions, LLC ("HGS"), and Mark Nagy Atalla.  All Defendants were served with the Summons, Complaint, TRO, and other related papers filed in this action on September 20, 2012.

## DISPOSITION

Having duly considered the parties' pleadings, papers, and argument, the Court hereby **GRANTS** the Preliminary Injunction against Defendants AMC, HGS, and Mark Nagy Atalla.

## FINDINGS OF FACT

1.     This Court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction over the Defendants.

2.     Venue lies properly with this Court.

3.     There is good cause to believe that Defendants AMC, HGS, and Mark Nagy Atalla (collectively "Defendants") have engaged and are likely to continue to

**PRELIMINARY INJUNCTION - Page 2**

engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Regulation O, Mortgage Assistance Relief Services, 12 C.F.R. Part 1015 (effective December 30, 2011, recodifying 16 C.F.R. Part 322, which was effective December 29, 2010, except for Section 322.5, which became effective January 31, 2011), and that the FTC is therefore likely to prevail on the merits of this action.

4.      There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act and Regulation O unless Defendants are restrained and enjoined by Order of this Court.

5.      There is good cause to believe that immediate and irreparable harm to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendants of their assets or business records unless Defendants are restrained and enjoined by Order of this Court.

6.      Good cause exists for continuing the appointment of the Temporary Receiver over Corporate Defendants AMC and HGS and the asset freeze imposed pursuant to the TRO in this case; permitting the FTC access to Defendants' business premises at the discretion of the Temporary Receiver; and the other equitable relief ordered herein.

7.      Weighing the equities and considering the FTC's likelihood of ultimate success, this Order is in the public interest.

8.      No security is required of any agency of the United States for issuance of a restraining order.  Fed. R. Civ. P. 65(c).

## ORDER

## DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

A.      "Assets" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property of any Defendant, or held for the benefit of any Defendant, wherever located, whether in the United States or abroad, including, but not

**PRELIMINARY INJUNCTION - Page 3**

1    limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects,

2    leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures,

3    inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the

4    Uniform Commercial Code), cash, and trusts, including, but not limited to, any trust

5    held for the benefit of any Defendant, any of the Individual Defendant's minor children,

6    or the Individual Defendant's spouse, and shall include both existing assets and assets

7    acquired after the date of entry of this Order.

8         B.    "Commercial communication" means any written or oral statement,

9    illustration, or depiction, whether in English or any other language, that is designed to

10   effect a sale or create interest in purchasing any service, plan, or program, whether it

11   appears on or in a label, package, package insert, radio, television, cable television,

12   brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free

13   standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of

14   purchase display, film, slide, audio program transmitted over a telephone system,

15   telemarketing script, onhold script, upsell script, training materials provided to

16   telemarketing firms, program-length commercial ("infomercial"), the internet, cellular

17   network, or any other medium.  Promotional materials and items and Web pages are

18   included in the term "commercial communication."

19        C.    "Consumer-specific commercial communication" means a commercial

20   communication that occurs prior to the consumer agreeing to permit the provider to seek

21   offers of mortgage assistance relief on behalf of the consumer, or otherwise agreeing to

22   use the mortgage assistance relief service, and that is directed at a specific consumer.

23        D.    "General commercial communication" means a commercial

24   communication that occurs prior to the consumer agreeing to permit the provider to seek

25   offers of mortgage assistance relief on behalf of the consumer, or otherwise agreeing to

26   use the mortgage assistance relief service, and that is not directed at a specific

27   consumer.

28

**PRELIMINARY INJUNCTION - Page 4**

E.     "Corporate Defendants" means American Mortgage Consulting Group, LLC, Home Guardian Management Solutions, LLC, and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

F.     "Defendants" means the Individual Defendant and all of the Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

G.     "Document" and "electronically stored information" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include, but are not limited to:

1.     The original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, or files; and

2.     Any electronically stored information stored on any Blackberries, flash drives, personal digital assistants ("PDAs"), desktop personal computer and workstations, laptops, notebooks, and other portable computers, or other electronic storage media, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes; backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether stored onsite with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained offsite by a third party; and computers and related offline storage used by Defendants or Defendants' participating associates, which may include persons who are not employees of the company or who do not work on company premises.

**PRELIMINARY INJUNCTION - Page 5**

H.      "Electronic data host" means any person or entity that stores, hosts, or otherwise maintains electronically stored information.

I.      "Financial institution" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

J.      "Individual Defendant" means Mark Nagy Atalla and any other names by which he might be known.

K.      "Material fact" means any fact that is likely to affect a person's choice of, or conduct regarding, goods, or services.

L.      "Mortgage assistance relief service" means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

1.      stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

2.      negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

3.      obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

4.      negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

5.      obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

6.      negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder.

The foregoing shall include any manner of claimed assistance, including, but not limited to, auditing or examining a consumer's mortgage or home loan application and offering to provide or providing legal services.

M.      "Person" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

N.      "Receivership Defendants" means American Mortgage Consulting Group, LLC, and Home Guardian Management Solutions, LLC, and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known, provided that the Temporary Receiver has reason to believe they are owned or controlled in whole or in part by any of the Defendants.

O.      "Receivership Estate" means and includes the estate of the Receivership Defendants created by this Order, and as may be modified or expanded by subsequent orders of this Court, including, but not limited to, all Receivership Assets as defined herein, regardless of whether such Receivership Assets are held by any Defendant or Individual Defendant, or third party not presently a party to the above-referenced action.

**I.**

**PROHIBITION ON COLLECTION OF ADVANCE FEES**

**IT IS THEREFORE ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with providing, offering to provide, or arranging for others to provide any mortgage assistance relief

1  service, are hereby preliminarily restrained and enjoined from requesting or receiving
2  payment of a fee or other consideration before the consumer has executed a written
3  agreement between the consumer and the consumer's dwelling loan holder or servicer
4  incorporating the offer of mortgage assistance relief that Defendants obtained from the
5  consumer's dwelling loan holder or servicer, in violation of Section 1015.5(a) of the
6  MARS Rule, 12 C.F.R. § 1015.5(a).

## II.

## REPRESENTATIONS PROHIBITED BY SECTION 5 OF THE FTC ACT

9      **IT IS FURTHER ORDERED** that Defendants and their officers, agents,
10  servants, employees, and attorneys, and those persons or entities in active concert or
11  participation with any of them who receive actual notice of this Order by personal
12  service, facsimile transmission, email, or otherwise, whether acting directly or through
13  any corporation, subsidiary, division, or other device, in connection with the
14  advertising, marketing, promotion, offering for sale, or sale of any mortgage assistance
15  relief service, are hereby preliminarily restrained and enjoined from engaging in, or
16  assisting others in engaging in, the following conduct:

17      A.   Misrepresenting, directly or indirectly, expressly or by implication, that
18           Defendants generally will obtain mortgage loan modifications for
19           consumers that will make consumers' payments substantially more
20           affordable; and

21      B.   Misrepresenting, directly or indirectly, expressly or by implication, that
22           Defendants will refund the consumer's fee if Defendants fail to obtain the
23           promised mortgage loan modification.

## III.

## REPRESENTATIONS PROHIBITED AND DISCLOSURES REQUIRED
## BY MARS RULE

27      **IT IS FURTHER ORDERED** that Defendants and their officers, agents,
28  servants, employees, and attorneys, and those persons or entities in active concert or

**PRELIMINARY INJUNCTION - Page 8**

participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with providing, offering to provide, or arranging for others to provide any mortgage assistance relief service, are hereby preliminarily restrained and enjoined from engaging in the following conduct:

    A.    Representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation of Section 1015.3(a) of the MARS Rule, 12 C.F.R. § 1015.3(a);

    B.    Misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including, but not limited to:

        1.    The likelihood of negotiating, obtaining, or arranging any represented service or result, including, but not limited to, the likelihood of negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees, in violation of Section § 1015.3(b)(1) of the MARS Rule, 12 C.F.R. § 1015.3(b)(1);

        2.    The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result, in violation of Section 1015.3(b)(2) of the MARS Rule, 12 C.F.R. § 1015.3(b)(2);

        3.    That a mortgage assistance relief service is affiliated with, endorsed or approved by, or otherwise associated with the government or the maker, holder, or servicer of the consumer's dwelling loan, in violation of Section 1015.3(b)(3) of the MARS Rule, 12 C.F.R. § 1015.3(b)(3);

4.     The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan, in violation of Section 1015.3(b)(4) of the MARS Rule, 12 C.F.R. § 1015.3(b)(4);

5.     The terms or conditions of any refund, cancellation, exchange, or repurchase policy for a mortgage assistance relief service, including, but not limited to, the likelihood of obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted, for a mortgage assistance relief service, in violation of Section 1015.3(b)(6) of the MARS Rule, 12 C.F.R. § 1015.3(b)(6); or

6.     That the consumer will receive legal representation, in violation of Section 1015.3(b)(8) of the MARS Rule, 12 C.F.R. § 1015.3(b)(8);

C.     Making any representation, expressly or by implication, about the benefits, performance, or efficacy of any mortgage assistance relief service including, but not limited to, Defendants' representations that the vast majority of their clients obtain the solutions they contract for, unless, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that substantiates that the representation is true, in violation of Section 1015.3(c) of the MARS Rule, 12 C.F.R. § 1015.3(c);

D.     Failing to disclose the following information in every consumer-specific commercial communication: "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of Section 1015.4(b)(1) of the MARS Rule, 12 C.F.R. § 1015.4(b)(1). For the purposes of this section, the amount "you will have to pay" shall consist of

the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the sales offer, including, but not limited to, all fees and charges; and

E.    Failing to disclose the following information in every general commercial communication and every consumer-specific commercial communication:

1.    "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of Section 1015.4(a)(1) and (b)(2) of the MARS Rule, 12 C.F.R. § 1015.4(a)(1) and (b)(2); and

2.    In cases where the mortgage assistance relief service provider has represented, expressly or by implication, that consumers will receive any service or result set forth in paragraphs (2) through (6) of the definition of "Mortgage Assistance Relief Service," Section 1015.2 of the MARS Rule, 12 C.F.R. § 1015.2, "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of Section 1015.4(a)(2) and (b)(3), 12 C.F.R. § 1015.4(a)(2) and (b)(3).

## IV.

## PRESERVATION OF RECORDS AND TANGIBLE THINGS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby preliminarily enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to the business practices, or business or personal finances, of Defendants, or other entity directly or indirectly under the control of Defendants.

# V.

## DISABLEMENT OF WEBSITES

**IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them and pending determination of the FTC's request for a preliminary injunction, (1) any person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

A.  Immediately do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, or sale of any mortgage assistance relief service, including, but not limited to, www.homeguardiansolutions.com, www.americanmortgageconsulting.com, and www.americanmortagegroup.co, and containing statements or representations prohibited by Sections I, II, and III of this Order, cannot be accessed by the public;

B.  Prevent the destruction or erasure of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, or sale of any mortgage assistance relief service, by preserving such website in the format in which it is maintained currently; and

C.  Immediately notify in writing counsel for the FTC of any other Internet website operated or controlled by any Defendant not listed in Subsection V.A above.

# VI.

## SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS

**IT IS FURTHER ORDERED** that any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, or sale of any mortgage assistance relief service, and containing statements or representations prohibited by Sections I, II, and III of this Order, including, but not limited to, www.homeguardiansolutions.com, www.americanmortgageconsulting.com, and www.americanmortagegroup.co, and provide immediate notice to counsel for the FTC of any other Internet domain names registered or controlled by any Defendants.

# VII.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, servants, employees, and attorneys, and all persons or entities directly or indirectly under the control of any of them, including any financial institution, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, are hereby preliminarily restrained and enjoined from directly or indirectly:

A.  Selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real or personal property, or other assets or any interest therein, wherever located, including any assets outside the territorial United States, that are:

1.  in the actual or constructive possession of any Defendant;

2.  owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by, or belonging to, any Defendant; or

**PRELIMINARY INJUNCTION - Page 13**

3.      in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belong to, any corporation, partnership, trust, or other entity directly or indirectly owned, managed, or under the control of any Defendant;

B.   Opening, or causing to be opened, any safe-deposit boxes titled in the name of any Defendant, or subject to access by any Defendant;

C.   Incurring charges on any credit card, stored value card, debit card, or charge card issued in the name, singly or jointly, of any Defendant or any other entity directly or indirectly owned, managed, or controlled by any Defendant;

D.   Obtaining a personal or secured loan for or on behalf of any Defendant; or

E.   Cashing any checks from consumers, clients, or customers of any Defendant; and

F.   The funds, property, and assets affected by this Section shall include: (a) all assets of each Defendant as of the time this Order is entered, including, without limitation, accounts held by American Mortgage Consulting Group, LLC, also d.b.a. American Mortgage Consulting, American Mortgage Group, AMC Consulting, and AMG Consulting; Home Guardian Management Solutions, LLC, also d.b.a. Home Guardian Solutions and HGS Consulting; and Newport Mortgage or Newport Mortgage Group, to the extent that it may hold accounts on which Defendant Mark Nagy Atalla is a signatory; and Mark Nagy Atalla; and (b) those assets obtained or received after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint.  This Section does not prohibit transfers to the Temporary Receiver, as specifically required in Section XVII, nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section XI of this Order.

**PRELIMINARY INJUNCTION - Page 14**

# VIII.

## RETENTION OF ASSETS AND DOCUMENTS BY THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset at any time since January 1, 2011, shall:

A.   Hold, preserve, and retain within such entity's or person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, document, electronically stored information, or asset held by or under such entity's or person's control, except as directed by further order of the Court or as directed in writing by the Temporary Receiver regarding accounts, documents, or assets held in the name of or benefit of any Receivership Defendant;

B.   Provide the Temporary Receiver, the Temporary Receiver's agents, the FTC, and the FTC's agents immediate access to electronically stored information stored, hosted, or otherwise maintained on behalf of Defendants for forensic imaging;

C.   Deny access to any safe-deposit boxes that are either titled in the name, individually or jointly, or subject to access by, any Defendant or other party subject to Section VII above;

D.   Provide to counsel for the FTC and the Temporary Receiver, within one (1) business day, a sworn statement setting forth:

1.      the identification of each account or asset titled in the name, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, whether in whole or in part;

2.      the balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served;

3.      the identification of any safe-deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Defendant or other party subject to Section VII above, whether in whole or in part; and

4.      if the account, safe-deposit box, or other asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the person or entity to whom such account or other asset was remitted;

E.      Provide to counsel for the FTC and the Temporary Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe-deposit box logs; provided that such institution or custodian may charge a reasonable fee; and

F.      Cooperate with all reasonable requests of the Temporary Receiver relating to this Order's implementation;

G.      The accounts subject to this provision include: (a) all assets of each Defendant deposited as of the time this Order is entered, and (b) those

**PRELIMINARY INJUNCTION - Page 16**

assets deposited after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint.  This Section does not prohibit transfers to the Temporary Receiver, as specifically required in Section XVII, nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section XI of this Order; and

H.  The FTC is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena documents immediately from any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VII above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset at any time since January 1, 2011, and such financial or brokerage institution, business entity, electronic data host, or person shall respond to such subpoena within three (3) business days after service.

## IX.

## FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that each Defendant, within three (3) business days of service of this Order, shall prepare and deliver to counsel for the FTC and the Temporary Receiver:

A.  For the Individual Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant on the form of Attachment A to this Order captioned "Financial Statement of Individual Defendant;"

B.  For each Corporate Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise

1  agreed upon with FTC counsel) in the form of Attachment B to this Order

2  captioned "Financial Statement of Corporate Defendant;" and

3  C.  For all Defendants, a list of all officers and directors of each Corporate

4  Defendant and all other individuals or entities with authority to direct the

5  operations of each Corporate Defendant or withdraw money from the

6  account of each Corporate Defendant.

7  **X.**

8  **CONSUMER CREDIT REPORTS**

9  **IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit

10  Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish to

11  the FTC a consumer report concerning any Defendant.

12  **XI.**

13  **REPATRIATION OF FOREIGN ASSETS**

14  **IT IS FURTHER ORDERED** that, within five (5) business days following the

15  service of this Order, each Defendant shall:

16  A.  Provide counsel for the FTC and the Temporary Receiver with a full

17  accounting of all assets, accounts, funds, and documents outside of the

18  territory of the United States that are held either:  (1) by Defendants; (2)

19  for their benefit; (3) in trust by or for them, individually or jointly; or (4)

20  under their direct or indirect control, individually or jointly;

21  B.  Transfer to the territory of the United States all assets, accounts, funds, and

22  documents in foreign countries held either: (1) by Defendants; (2) for their

23  benefit; (3) in trust by or for them, individually or jointly; or (4) under their

24  direct or indirect control, individually or jointly; and

25  C.  Provide the FTC access to all records of accounts or assets of the

26  Corporate Defendants and Individual Defendants held by financial

27  institutions located outside the territorial United States by signing the

28

**PRELIMINARY INJUNCTION - Page 18**

Consent to Release of Financial Records attached to this Order as Attachment C;

D.     All repatriated assets, accounts, funds, and documents are subject to Section VII of this Order.

## XII.

## NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section XI of this Order, including, but not limited to:

A.     Sending any statement, letter, fax, email, or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Section XI of this Order; or

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all assets have been fully repatriated pursuant to Section XI of this Order.

## XIII.

## CONTINUATION OF APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Robb Evans & Associates, LLC, is appointed to continue as Temporary Receiver for the business activities of Receivership Defendants with the full power of an equity receiver.  The Temporary Receiver shall be an agent of this Court and solely an agent of this Court in acting as Temporary Receiver under this Order.  The Temporary Receiver shall be accountable directly to this Court. The Temporary Receiver shall comply with all laws and Local Rules of this Court

**PRELIMINARY INJUNCTION - Page 19**

governing receivers, including, but not limited to, Local Rules 66-1 through 66-5.1 and Local Rule 66-8.

## XIV.

## DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A.  Assume full control of the Receivership Defendants by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.  Take exclusive custody, control, and possession of all assets, documents, and electronically stored information of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated.  The Temporary Receiver shall have full power to divert mail and to sue for, collect, receive, take into possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants.  *Provided*, *however*, that the Temporary Receiver shall not attempt to collect or receive any amount from a consumer if the Temporary Receiver believes the consumer was a victim of the unlawful conduct alleged in the Complaint in this matter;

C.  Take all steps necessary to secure the business premises of the Receivership Defendants.  Such steps may include, but are not limited to, the following, as the Temporary Receiver deems necessary or advisable:

   1.  serving and filing this Order;

   2.  completing a written inventory of all Receivership assets;

**PRELIMINARY INJUNCTION - Page 20**

      3.     obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords;

      4.     videotaping and/or photographing all portions of the location;

      5.     securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location;

      6.     requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Temporary Receiver with proof of identification, and to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants; and

      7.     requiring all employees, independent contractors, and consultants of the Receivership Defendants to complete a questionnaire submitted by the Temporary Receiver;

D.     Conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

E.     Liquidate any and all securities or commodities owned by or for the benefit of the Receivership Defendants as the Temporary Receiver deems to be advisable or necessary;

**PRELIMINARY INJUNCTION - Page 21**

F.     Enter into contracts and purchase insurance as the Temporary Receiver deems to be advisable or necessary;

G.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

H.    Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J.     Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Temporary Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K.    Determine and implement measures to ensure that the Receivership Defendants comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L.    Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the

**PRELIMINARY INJUNCTION - Page 22**

Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Temporary Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M.   Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Temporary Receiver in his role as Temporary Receiver, or against the Receivership Defendants, that the Temporary Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

N.   Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided*, *however*, that the continuation and conduct of the business shall be conditioned upon the Temporary Receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate;

O.   Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Temporary Receiver and by agents of any process server retained by the Temporary Receiver;

P.   Open one or more bank accounts in the Central District of California as designated depositories for funds of the Receivership Defendants.  The Temporary Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s);

Q.     Maintain accurate records of all receipts and expenditures that he makes as Temporary Receiver;

R.     Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

S.     Maintain the chain of custody of all of Defendants' records in his possession, pursuant to procedures to be established in writing with the approval of the FTC.

## XV.

## TEMPORARY RECEIVER AND FTC IMMEDIATE ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that Defendants and their officers, directors, agents, servants, employees, attorneys, and all other persons or entities directly or indirectly, in whole or in part, under their control, and all other persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other entity, shall:

A.     Immediately identify to FTC's counsel and the Temporary Receiver:

1.     All of Defendants' business premises;

2.     Any non-residence premises where any Defendant conducts business, sales operations, or customer service operations;

3.     Any non-residence premises where documents or electronically stored information related to the business, sales operations, or customer service operations of any Defendant are hosted, stored, or otherwise maintained, including, but not limited to, the name and location of any electronic data hosts; and

4.     Any non-residence premises where assets belonging to any Defendant are stored or maintained;

**PRELIMINARY INJUNCTION - Page 24**

B.  Allow the FTC and the Temporary Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants, immediate access to:

1.  All of the Defendants' business premises, including, but not limited to:

a.  1000 Bristol St. N., Suite 17-135, Newport Beach, CA 92660;

b.  3857 Birch St., Suite 313, Newport Beach, CA 92260;

c.  2967 Michelson Dr., #G620, Irvine, CA 92612;

d.  3400 Irvine Avenue, Suite 205, Newport Beach, CA 92660 (which may be signed "The Newport Group");

and such other business locations that are wholly or partially owned, rented, leased, or under the temporary or permanent control of any Defendant;

2.  Any other premises where the Defendants conduct business, sales operations, or customer service operations;

3.  Any premises where documents related to the Defendants' businesses are stored or maintained;

4.  Any premises where assets belonging to any Defendant are stored or maintained; and

5.  Any documents located at any of the locations described in this Section;

C.  Provide the FTC and the Temporary Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants, with any necessary means of access to, copying of, and forensic imaging of documents or electronically stored information, including, without limitation, the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, computer access codes of all computers used to conduct Receivership Defendants'

**PRELIMINARY INJUNCTION - Page 25**

business, access to (including, but not limited to, execution of any documents necessary for access to and forensic imaging of) any data stored, hosted, or otherwise maintained by an electronic data host, and storage area access information;

D. The FTC and the Temporary Receiver are authorized to employ the assistance of law enforcement officers, including, but not limited to, the United States Postal Inspection Service, Internal Revenue Service, Federal Bureau of Investigation, and local police to effect service, to implement peacefully the provisions of this Order, and to keep the peace. The Temporary Receiver shall allow the FTC and its representatives, agents, contractors, or assistants into the premises and facilities described in this Section to inspect, inventory, image, and copy documents or electronically stored information relevant to any matter contained in this Order. Counsel for the FTC and the Temporary Receiver may exclude Defendants and their agents and employees from the business premises and facilities during the immediate access. No one shall interfere with the FTC's or Temporary Receiver's inspection of the Defendants' premises or documents;

E. The Temporary Receiver and the FTC shall have the right to remove any documents related to Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed shall be returned within five (5) business days of completing said inventory and copying. If any property, records, documents, or computer files relating to the Receivership Defendants' finances or business practices are located in the residence of any Defendant or are otherwise in the custody or control of any Defendant, then such Defendant shall produce them to the Temporary Receiver within twenty-four (24) hours of service of this Order. In order to prevent the destruction of computer data, the Temporary Receiver shall isolate all computers from

**PRELIMINARY INJUNCTION - Page 26**

outside access.  The FTC's and the Temporary Receiver's representatives may also photograph and videotape the inside and outside of all premises to which they are permitted access by this Order, and all documents and other items found on such premises;

F.    The FTC's access to the Defendants' documents pursuant to this provision shall not provide grounds for any Defendant to object to any subsequent request for documents served by the FTC; and

G.    The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XVI.

## COOPERATION WITH TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that:

A.    Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, and corporations, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Temporary Receiver.  Defendants' cooperation and assistance shall include, but not be limited to:

1.    Providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order, including, but not limited to, allowing the Temporary Receiver to inspect documents and assets and to partition office space;

2.    Providing any username or password and executing any documents required to access any computer or electronic files in any medium,

**PRELIMINARY INJUNCTION - Page 27**

including, but not limited to, electronically stored information

stored, hosted or otherwise maintained by an electronic data host;

and

    3.    Advising all persons who owe money to the Receivership

Defendants that all debts should be paid directly to the Temporary

Receiver; and

B.    Defendants and their officers, directors, agents, servants, employees,

attorneys, and all other persons or entities directly or indirectly, in whole

or in part, under their control, and all other persons in active concert or

participation with them who receive actual notice of this Order by personal

service, facsimile transmission, email, or otherwise, are hereby

preliminarily restrained and enjoined from directly or indirectly:

    1.    Transacting any of the business of the Receivership Defendants;

    2.    Destroying, secreting, erasing, mutilating, defacing, concealing,

altering, transferring or otherwise disposing of, in any manner,

directly or indirectly, any documents, electronically stored

information, or equipment of the Receivership Defendants,

including, but not limited to, contracts, agreements, consumer files,

consumer lists, consumer addresses and telephone numbers,

correspondence, advertisements, brochures, sales material, sales

presentations, documents evidencing or referring to Defendants'

services, training materials, scripts, data, computer tapes, disks,

external storage devices, or other computerized records, books,

written or printed records, handwritten notes, telephone logs,

"verification" or "compliance" tapes or other audio or video tape

recordings, receipt books, invoices, postal receipts, ledgers, personal

and business canceled checks and check registers, bank statements,

appointment books, copies of federal, state, or local business or

personal income or property tax returns, photographs, mobile
devices, electronic storage media, accessories, and any other
documents, records, or equipment of any kind that relate to the
business practices or business or personal finances of the
Receivership Defendants or any other entity directly or indirectly
under the control of the Receivership Defendants;

3.     Transferring, receiving, altering, selling, encumbering, pledging,
assigning, liquidating, or otherwise disposing of any assets owned,
controlled, or in the possession or custody of, or in which an interest
is held or claimed by, the Receivership Defendants or the Temporary
Receiver;

4.     Excusing debts owed to the Receivership Defendants;

5.     Failing to notify the Temporary Receiver of any asset, including
accounts, of a Receivership Defendant held in any name other than
the name of the Receivership Defendant, or by any person or entity
other than the Receivership Defendant, or failing to provide any
assistance or information requested by the Temporary Receiver in
connection with obtaining possession, custody, or control of such
assets;

6.     Failing to create and maintain books, records, and accounts which,
in reasonable detail, accurately, fairly, and completely reflect the
incomes, assets, disbursements, transactions, and use of monies by
the Defendants or any other entity directly or indirectly under the
control of the Defendants;

7.     Doing any act or refraining from any act whatsoever to interfere
with the Temporary Receiver's taking custody, control, possession,
or managing of the assets or documents subject to this Receivership;
or to harass or to interfere with the Temporary Receiver in any way;

**PRELIMINARY INJUNCTION - Page 29**

or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; and

8.     Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

## XVII.

## DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Temporary Receiver, Defendants and any other person or entity, including, but not limited to, financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Temporary Receiver:

A.     All assets of the Receivership Defendants;

B.     All documents and electronically stored information of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title documents and other papers;

C.     All assets belonging to members of the public now held by the Receivership Defendants;

D.     All keys, computer and other passwords, user names, entry codes, combinations to locks required to open or gain or secure access to any

**PRELIMINARY INJUNCTION - Page 30**

assets or documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

E.   Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants; and

F.   In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section XVII, the Temporary Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county to seize the asset, document, or other thing and to deliver it to the Temporary Receiver.

## XVIII.

## COMPENSATION FOR RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants.  The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order.  The Temporary Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

# XIX.

## RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court within ninety (90) days from the date of entry of this Order, regarding:  (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Temporary Receiver intends to take in the future to:  (a) prevent any diminution in the value of assets of the Receivership Defendants, (b) pursue receivership assets from third parties, and (c) adjust the liabilities of the Receivership Defendants, if appropriate; (5) the Temporary Receiver's assessment of whether the business can be operated in compliance with this Order; and (6) any other matters that the Temporary Receiver believes should be brought to the Court's attention.  *Provided, however*, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership assets, the portions of the Temporary Receiver's report containing such information may be filed under seal and not served on the parties.

# XX.

## WITHDRAWAL OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that **if** the Temporary Receiver and any professional retained by the Temporary Receiver, including, but not limited to, his attorneys and accountants, **wish** to withdraw from his or her respective appointments or representations and apply for payment of their professional fees and costs at any time after the date of this Order, **the person who wishes to withdraw must send** written notice seven (7) days prior to the date of the intended withdrawal to the Court and to the parties along with a written report reflecting the Temporary Receiver's work, findings, and recommendations, as well as an accounting for all funds and assets in possession or control of the Temporary Receiver.  The Temporary Receiver and professionals shall be relieved of all liabilities and responsibilities, and the Temporary Receiver shall be

1 exonerated and the receivership deemed closed **upon approval by the Court** of

2 withdrawal.  The Court will retain jurisdiction to consider the fee applications, report,

3 and accounting submitted by the Receiver and the professionals.  The written notice

4 shall include an interim report indicating the Temporary Receiver's actions and reflect

5 the knowledge gained along with the fee applications of the Temporary Receiver and

6 his professionals.  The report shall also contain the Temporary Receiver's

7 recommendations, if any.

8 **XXI.**

9 **TEMPORARY RECEIVER'S BOND/LIABILITY**

10 **IT IS FURTHER ORDERED** that no bond shall be required in connection with

11 the appointment of the Temporary Receiver.  Except for an act of gross negligence, the

12 Temporary Receiver and the professionals shall not be liable for any loss or damage

13 incurred by any of the Defendants, their officers, agents, servants, employees, and

14 attorneys or any other person, by reason of any act performed or omitted to be

15 performed by the Temporary Receiver and the professionals in connection with the

16 discharge of his or her duties and responsibilities, including, but not limited to, their

17 withdrawal from the case under Section XX.

18 **XXII.**

19 **PROHIBITION ON RELEASE OF CONSUMER INFORMATION**

20 **IT IS FURTHER ORDERED** that, except as required by a law enforcement

21 agency, law, regulation, or court order, Defendants, and their officers, agents, servants,

22 employees, and attorneys, and all other persons in active concert or participation with

23 any of them who receive actual notice of this Order by personal service, facsimile

24 transmission, email, or otherwise, are preliminarily restrained and enjoined from

25 disclosing, using, or benefitting from consumer information, including the name,

26 address, telephone number, email address, social security number, other identifying

27 information, or any data that enables access to a consumer's account (including a credit

28 card, bank account, or other financial account), of any person which any Defendant

**PRELIMINARY INJUNCTION - Page 33**

obtained prior to entry of this Order in connection with any mortgage assistance relief service.

## XXIII.

## STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A.   Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, assets, documents, or the Temporary Receiver or the Temporary Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1.   Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.   Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.   Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.   Doing any act or thing whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or management of the

assets or documents subject to this Receivership, or to harass or interfere with the Temporary Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants;

B.   This Section does not stay:

1.   The commencement or continuation of a criminal action or proceeding;

2.   The commencement or continuation of an action or proceeding by the State Bar of California to enforce its police or regulatory power;

3.   The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4.   The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

5.   The issuance to a Receivership Defendant of a notice of tax deficiency; and

C.   Except as otherwise provided in this Order, all persons and entities in need of documentation from the Temporary Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Temporary Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Temporary Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## XXIV.

## LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that the FTC is granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order, in lieu

of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, and applicable Local Rules, the FTC is granted leave to:

   A.   Take the deposition, on three (3) days' notice, of any person or entity, whether or not a party, for the purpose of discovering: (1) the nature, location, status, and extent of assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order.  The limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions shall not apply to depositions taken pursuant to this Section.  In addition, any such depositions taken pursuant to this Section shall not be counted toward the ten-deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A)(i) and 31(a)(2)(A)(i) and shall not preclude the FTC from subsequently deposing the same person or entity in accordance with the Federal Rules of Civil Procedure.  Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.  Any deposition taken pursuant to this Subsection that has not been reviewed and signed by the deponent may be used by any party for purposes of the preliminary injunction hearing;

   B.   Serve upon parties requests for production of documents or inspection that require production or inspection within three (3) calendar days of service, and may serve subpoenas upon non-parties that direct production or inspection within five (5) calendar days of service, for the purpose of discovering:  (1) the nature, location, status, and extent of assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order, *provided that* twenty-four

**PRELIMINARY INJUNCTION - Page 36**

(24) hours' notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data;

C.     Serve deposition notices and other discovery requests upon the parties to this action by facsimile or overnight courier, and take depositions by telephone or other remote electronic means; and

D.     If a Defendant fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, seek to prohibit that Defendant from introducing evidence at any subsequent hearing.

## XXV.

## DEFENDANTS' DUTY TO DISTRIBUTE ORDER

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, electronic data host, agent, attorney, spouse, and representative of Defendants and shall, within three (3) calendar days from the date of entry of this Order, provide counsel for the FTC with a sworn statement that:  (a) confirms that Defendants have provided copies of the Order as required by this Section, and (b) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order.  Furthermore, Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other persons or entities in active concert or participation with Defendants to disregard this Order or believe that they are not bound by its provisions.

# XXVI.

## CORRESPONDENCE WITH PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent either via electronic submission or via Federal Express to:

Maxine Stansell                              with a copy to:

Federal Trade Commission                     Barbara Chun

915 Second Ave., Suite 2896                  Federal Trade Commission

Seattle, WA 98174                            10877 Wilshire Blvd., Suite 700

mstansell@ftc.gov                            Los Angeles, CA 90024

                                             bchun@ftc.gov

# XXVII.

## SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, email, personal or overnight delivery, or U.S. Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Defendant, or that may otherwise be subject to any provision of this Order.  Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

# XXVIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.


**IT IS SO ORDERED**, this 1st day of October, 2012, at 12:00 p.m. (Pacific Time).


Dated: October 1, 2012

*David O. Carter*
_____
Honorable David O. Carter
UNITED STATES DISTRICT JUDGE


Respectfully submitted,


_____
MAXINE R. STANSELL
KATHRYN C. DECKER
Attorneys for Plaintiff
Federal Trade Commission

B.   Allow the FTC and the Temporary Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants, immediate access to:

1.   All of the Defendants' business premises, including, but not limited to:

a.   1000 Bristol St. N., Suite 17-135, Newport Beach, CA 92660;

b.   3857 Birch St., Suite 313, Newport Beach, CA 92260;

c.   2967 Michelson Dr., #G620, Irvine, CA 92612;

d.   3400 Irvine Avenue, Suite 205, Newport Beach, CA 92660 (which may be signed "The Newport Group");

and such other business locations that are wholly or partially owned, rented, leased, or under the temporary or permanent control of any Defendant;

2.   Any other premises where the Defendants conduct business, sales operations, or customer service operations;

3.   Any premises where documents related to the Defendants' businesses are stored or maintained;

4.   Any premises where assets belonging to any Defendant are stored or maintained; and

5.   Any documents located at any of the locations described in this Section;

C.   Provide the FTC and the Temporary Receiver, and their respective representatives, agents, attorneys, investigators, paralegals, contractors, or assistants, with any necessary means of access to, copying of, and forensic imaging of documents or electronically stored information, including, without limitation, the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, computer access codes of all computers used to conduct Receivership Defendants'

[PROPOSED] PRELIMINARY INJUNCTION - Page 25

1    business, access to (including, but not limited to, execution of any

2    documents necessary for access to and forensic imaging of) any data

3    stored, hosted, or otherwise maintained by an electronic data host, and

4    storage area access information;

5    D.   The FTC and the Temporary Receiver are authorized to employ the

6    assistance of law enforcement officers, including, but not limited to, the

7    United States Postal Inspection Service, Internal Revenue Service, Federal

8    Bureau of Investigation, and local police to effect service, to implement

9    peacefully the provisions of this Order, and to keep the peace.  The

10   Temporary Receiver shall allow the FTC and its representatives, agents,

11   contractors, or assistants into the premises and facilities described in this

12   Section to inspect, inventory, image, and copy documents or electronically

13   stored information relevant to any matter contained in this Order.  Counsel

14   for the FTC and the Temporary Receiver may exclude Defendants and

15   their agents and employees from the business premises and facilities during

16   the immediate access.  No one shall interfere with the FTC's or Temporary

17   Receiver's inspection of the Defendants' premises or documents;

18   E.   The Temporary Receiver and the FTC shall have the right to remove any

19   documents related to Defendants' business practices from the premises in

20   order that they may be inspected, inventoried, and copied.  The materials

21   so removed shall be returned within five (5) business days of completing

22   said inventory and copying.  If any property, records, documents, or

23   computer files relating to the Receivership Defendants' finances or

24   business practices are located in the residence of any Defendant or are

25   otherwise in the custody or control of any Defendant, then such Defendant

26   shall produce them to the Temporary Receiver within twenty-four (24)

27   hours of service of this Order.  In order to prevent the destruction of

28   computer data, the Temporary Receiver shall isolate all computers from

**[PROPOSED] PRELIMINARY INJUNCTION - Page 26**

1  outside access. The FTC's and the Temporary Receiver's representatives

2  may also photograph and videotape the inside and outside of all premises

3  to which they are permitted access by this Order, and all documents and

4  other items found on such premises;

5  F.  The FTC's access to the Defendants' documents pursuant to this provision

6  shall not provide grounds for any Defendant to object to any subsequent

7  request for documents served by the FTC; and

8  G.  The Temporary Receiver shall have the discretion to determine the time,

9  manner, and reasonable conditions of such access.

10  ## XVI.

11  ## COOPERATION WITH TEMPORARY RECEIVER

12  **IT IS FURTHER ORDERED** that:

13  A.  Defendants, and their officers, agents, directors, servants, employees,

14  salespersons, independent contractors, attorneys, and corporations, and all

15  other persons or entities in active concert or participation with them, who

16  receive actual notice of this Order by personal service, facsimile

17  transmission, email, or otherwise, whether acting directly or through any

18  trust, corporation, subsidiary, division, or other device, or any of them,

19  shall fully cooperate with and assist the Temporary Receiver. Defendants'

20  cooperation and assistance shall include, but not be limited to:

21  1.  Providing any information to the Temporary Receiver that the

22  Temporary Receiver deems necessary to exercising the authority and

23  discharging the responsibilities of the Temporary Receiver under

24  this Order, including, but not limited to, allowing the Temporary

25  Receiver to inspect documents and assets and to partition office

26  space;

27  2.  Providing any username or password and executing any documents

28  required to access any computer or electronic files in any medium,

including, but not limited to, electronically stored information stored, hosted or otherwise maintained by an electronic data host; and

3. Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver; and

B. Defendants and their officers, directors, agents, servants, employees, attorneys, and all other persons or entities directly or indirectly, in whole or in part, under their control, and all other persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, are hereby preliminarily restrained and enjoined from directly or indirectly:

1. Transacting any of the business of the Receivership Defendants;

2. Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any documents, electronically stored information, or equipment of the Receivership Defendants, including, but not limited to, contracts, agreements, consumer files, consumer lists, consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, documents evidencing or referring to Defendants' services, training materials, scripts, data, computer tapes, disks, external storage devices, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or

personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other documents, records, or equipment of any kind that relate to the business practices or business or personal finances of the Receivership Defendants or any other entity directly or indirectly under the control of the Receivership Defendants;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants or the Temporary Receiver;

4. Excusing debts owed to the Receivership Defendants;

5. Failing to notify the Temporary Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of such assets;

6. Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, assets, disbursements, transactions, and use of monies by the Defendants or any other entity directly or indirectly under the control of the Defendants;

7. Doing any act or refraining from any act whatsoever to interfere with the Temporary Receiver's taking custody, control, possession, or managing of the assets or documents subject to this Receivership; or to harass or to interfere with the Temporary Receiver in any way;

[PROPOSED] PRELIMINARY INJUNCTION - Page 29

1    or to interfere in any manner with the exclusive jurisdiction of this

2    Court over the assets or documents of the Receivership Defendants;

3    or to refuse to cooperate with the Temporary Receiver or the

4    Temporary Receiver's duly authorized agents in the exercise of their

5    duties or authority under any Order of this Court; and

6    8.   Filing, or causing to be filed, any petition on behalf of the

7    Receivership Defendants for relief under the United States

8    Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission

9    from this Court.

## XVII.

## DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Temporary Receiver, Defendants and any other person or entity, including, but not limited to, financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Temporary Receiver:

A.   All assets of the Receivership Defendants;

B.   All documents and electronically stored information of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title documents and other papers;

C.   All assets belonging to members of the public now held by the Receivership Defendants;

D.   All keys, computer and other passwords, user names, entry codes, combinations to locks required to open or gain or secure access to any

assets or documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

E. Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants; and

F. In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section XVII, the Temporary Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county to seize the asset, document, or other thing and to deliver it to the Temporary Receiver.

## XVIII.

## COMPENSATION FOR RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants. The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Temporary Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XIX.

## RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court within ninety (90) days from the date of entry of this Order, regarding: (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Temporary Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of the Receivership Defendants, (b) pursue receivership assets from third parties, and (c) adjust the liabilities of the Receivership Defendants, if appropriate; (5) the Temporary Receiver's assessment of whether the business can be operated in compliance with this Order; and (6) any other matters that the Temporary Receiver believes should be brought to the Court's attention. *Provided, however*, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership assets, the portions of the Temporary Receiver's report containing such information may be filed under seal and not served on the parties.

## XX.

## WITHDRAWAL OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that **if** the Temporary Receiver and any professional retained by the Temporary Receiver, including, but not limited to, his attorneys and accountants, **wish** to withdraw from his or her respective appointments or representations and apply for payment of their professional fees and costs at any time after the date of this Order, **the person who wishes to withdraw must send** written notice seven (7) days prior to the date of the intended withdrawal to the Court and to the parties along with a written report reflecting the Temporary Receiver's work, findings, and recommendations, as well as an accounting for all funds and assets in possession or control of the Temporary Receiver. The Temporary Receiver and professionals shall be relieved of all liabilities and responsibilities, and the Temporary Receiver shall be

1    exonerated and the receivership deemed closed **upon approval by the Court** of

2    withdrawal.  The Court will retain jurisdiction to consider the fee applications, report,

3    and accounting submitted by the Receiver and the professionals.  The written notice

4    shall include an interim report indicating the Temporary Receiver's actions and reflect

5    the knowledge gained along with the fee applications of the Temporary Receiver and

6    his professionals.  The report shall also contain the Temporary Receiver's

7    recommendations, if any.

8                                              **XXI.**

9                        **TEMPORARY RECEIVER'S BOND/LIABILITY**

10        **IT IS FURTHER ORDERED** that no bond shall be required in connection with

11   the appointment of the Temporary Receiver.  Except for an act of gross negligence, the

12   Temporary Receiver and the professionals shall not be liable for any loss or damage

13   incurred by any of the Defendants, their officers, agents, servants, employees, and

14   attorneys or any other person, by reason of any act performed or omitted to be

15   performed by the Temporary Receiver and the professionals in connection with the

16   discharge of his or her duties and responsibilities, including, but not limited to, their

17   withdrawal from the case under Section XX.

18                                            **XXII.**

19             **PROHIBITION ON RELEASE OF CONSUMER INFORMATION**

20        **IT IS FURTHER ORDERED** that, except as required by a law enforcement

21   agency, law, regulation, or court order, Defendants, and their officers, agents, servants,

22   employees, and attorneys, and all other persons in active concert or participation with

23   any of them who receive actual notice of this Order by personal service, facsimile

24   transmission, email, or otherwise, are preliminarily restrained and enjoined from

25   disclosing, using, or benefitting from consumer information, including the name,

26   address, telephone number, email address, social security number, other identifying

27   information, or any data that enables access to a consumer's account (including a credit

28   card, bank account, or other financial account), of any person which any Defendant

**[PROPOSED] PRELIMINARY INJUNCTION - Page 33**

1 obtained prior to entry of this Order in connection with any mortgage assistance relief

2 service.

## XXIII.

## STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A. Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, assets, documents, or the Temporary Receiver or the Temporary Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or management of the

1                assets or documents subject to this Receivership, or to harass or

2                interfere with the Temporary Receiver in any way, or to interfere in

3                any manner with the exclusive jurisdiction of this Court over the

4                assets or documents of the Receivership Defendants;

5    B.    This Section does not stay:

6        1.    The commencement or continuation of a criminal action or

7             proceeding;

8        2.    The commencement or continuation of an action or proceeding by

9             the State Bar of California to enforce its police or regulatory power;

10       3.    The commencement or continuation of an action or proceeding by a

11            governmental unit to enforce such governmental unit's police or

12            regulatory power;

13       4.    The enforcement of a judgment, other than a money judgment,

14            obtained in an action or proceeding by a governmental unit to

15            enforce such governmental unit's police or regulatory power; or

16       5.    The issuance to a Receivership Defendant of a notice of tax

17            deficiency; and

18    C.    Except as otherwise provided in this Order, all persons and entities in need

19        of documentation from the Temporary Receiver shall in all instances first

20        attempt to secure such information by submitting a formal written request

21        to the Temporary Receiver, and, if such request has not been responded to

22        within thirty (30) days of receipt by the Temporary Receiver, any such

23        person or entity may thereafter seek an Order of this Court with regard to

24        the relief requested.

## XXIV.

## LIMITED EXPEDITED DISCOVERY

27     **IT IS FURTHER ORDERED** that the FTC is granted leave to conduct certain

28 expedited discovery, and that, commencing with the time and date of this Order, in lieu

of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, and applicable Local Rules, the FTC is granted leave to:

A.   Take the deposition, on three (3) days' notice, of any person or entity, whether or not a party, for the purpose of discovering: (1) the nature, location, status, and extent of assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order. The limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B) and 31(a)(2)(B) regarding subsequent depositions shall not apply to depositions taken pursuant to this Section. In addition, any such depositions taken pursuant to this Section shall not be counted toward the ten-deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A)(i) and 31(a)(2)(A)(i) and shall not preclude the FTC from subsequently deposing the same person or entity in accordance with the Federal Rules of Civil Procedure. Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery. Any deposition taken pursuant to this Subsection that has not been reviewed and signed by the deponent may be used by any party for purposes of the preliminary injunction hearing;

B.   Serve upon parties requests for production of documents or inspection that require production or inspection within three (3) calendar days of service, and may serve subpoenas upon non-parties that direct production or inspection within five (5) calendar days of service, for the purpose of discovering: (1) the nature, location, status, and extent of assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order, *provided that* twenty-four

| | | |
|---|---|---|
| 1 | | (24) hours' notice shall be deemed sufficient for the production of any |
| 2 | | such documents that are maintained or stored only as electronic data; |
| 3 | C. | Serve deposition notices and other discovery requests upon the parties to |
| 4 | | this action by facsimile or overnight courier, and take depositions by |
| 5 | | telephone or other remote electronic means; and |
| 6 | D. | If a Defendant fails to appear for a properly noticed deposition or fails to |
| 7 | | comply with a request for production or inspection, seek to prohibit that |
| 8 | | Defendant from introducing evidence at any subsequent hearing. |

**XXV.**

**DEFENDANTS' DUTY TO DISTRIBUTE ORDER**

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, electronic data host, agent, attorney, spouse, and representative of Defendants and shall, within three (3) calendar days from the date of entry of this Order, provide counsel for the FTC with a sworn statement that: (a) confirms that Defendants have provided copies of the Order as required by this Section, and (b) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other persons or entities in active concert or participation with Defendants to disregard this Order or believe that they are not bound by its provisions.

## XXVI.

## CORRESPONDENCE WITH PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent either via electronic submission or via Federal Express to:

Maxine Stansell                                          with a copy to:

Federal Trade Commission                       Barbara Chun

915 Second Ave., Suite 2896                    Federal Trade Commission

Seattle, WA 98174                                      10877 Wilshire Blvd., Suite 700

mstansell@ftc.gov                                      Los Angeles, CA 90024

                                                                       bchun@ftc.gov

## XXVII.

## SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, email, personal or overnight delivery, or U.S. Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXVIII.

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED**, this _____ day of _____, 2012, at _____ _____.m. (Pacific Time).

Dated: _____, 2012

_____
Honorable David O. Carter
UNITED STATES DISTRICT JUDGE

Respectfully submitted,

_____
MAXINE R. STANSELL
KATHRYN C. DECKER
Attorneys for Plaintiff
Federal Trade Commission

[PROPOSED] PRELIMINARY INJUNCTION - Page 39

**EXHIBIT  A**

# FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT

**Instructions**:

1.  Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2.  "Dependents" include your live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3.  "Assets" and "Liabilities" include <u>ALL</u> assets and liabilities, located within the United States or elsewhere, whether held individually or jointly.

4.  Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5.  Type or print legibly.

6.  Initial each page in the space provided in the lower right corner.

7.  Sign and date the completed financial statement on the last page.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

   (1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

   (2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

   (3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

Attachment A

## BACKGROUND INFORMATION

**Item 1.**      **Information About You**

Your Full Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____ Drivers License No. _____

Current Address _____ From (Date) _____

Rent or Own? _____ Telephone No. _____ Facsimile No. _____

E-Mail Address _____ Internet Home Page _____

Previous Addresses for past five years:

Address_____ Rent or Own?_____ From/Until_____

Address_____ Rent or Own?_____ From/Until_____

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they

were used_____

**Item 2.**      **Information About Your Spouse or Live-In Companion**

Spouse/Companion's Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____

Identify any other name(s) and/or social security number(s) your spouse/companion has used, and the time period(s)

during which they were used _____

Address (if different from yours) _____

From (Date) _____ Rent or Own?_____ Telephone No._____

Employer's Name and Address _____

Job Title _____ Years in Present Job _____ Annual Gross Salary/Wages $_____

**Item 3.**      **Information About Your Previous Spouse**

Previous Spouse's Name & Address _____

_____ Social Security No. _____ Date of Birth _____

**Item 4.**      **Contact Information**

Page  2                                                          Initials _____

**Attachment A**

Name & Address of Nearest Living Relative or Friend _____

_____ Telephone No. _____

**Item 5.**  **Information About Dependents Who Live With You**

· Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

· Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

· Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

**Item 6.**  **Information About Dependents Who Do Not Live With You**

· Name & Address _____

Date of Birth _____ Relationship _____ Social Security No. _____

· Name Address _____

Date of Birth _____ Relationship _____ Social Security No. _____

· Name & Address _____

Date of Birth _____ Relationship _____ Social Security No. _____

**Item 7.**  **Employment Information**

Provide the following information for this year-to-date and for each of the previous five full years, for each company of which you were a director, officer, employee, agent, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, draws, consulting fees, loans, loan payments, dividends, royalties or other benefits for which you did not pay (*e.g.,* health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

· Company Name & Address _____

Dates Employed: From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

**Item 7. continued**

Initials _____

Income Received:  This year-to-date:  $_____  _____:  $_____

20_____:  $_____  _____:  $_____

_____:  $_____  _____:  $_____

· Company Name & Address _____

Dates Employed:  From (Month/Year) _____  To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received:  This year-to-date:  $_____  _____:  $_____

20_____:  $_____  _____:  $_____

_____:  $_____  _____:  $_____

· Company Name & Address _____

Dates Employed:  From (Month/Year) _____  To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received:  This year-to-date:  $_____  _____:  $_____

20_____:  $_____  _____:  $_____

_____:  $_____  _____:  $_____

**Item 8.**       **Pending Lawsuits Filed by You or Your Spouse**

List all pending lawsuits that have been filed by you or your spouse in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____  Relief Requested _____  Nature of Lawsuit _____

_____  Status _____

**Item 9.**       **Pending Lawsuits Filed Against You or Your Spouse**

List all pending lawsuits that have been filed against you or your spouse in court or before an administrative agency.  (List

Page  4

Initials _____

**Attachment A**

lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

### Item 10.    Safe Deposit Boxes

List all safe deposit boxes, located within the United States or elsewhere, held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| | | |
| | | |
| | | |

### Item 11.    Business Interests

List all businesses for which you, your spouse, or your dependents are an officer or director.

· Business' Name & Address _____

Business Format (*e.g., corporation*) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

· Business' Name & Address _____

Business Format (*e.g., corporation*) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

· Business' Name & Address _____

Business Format (*e.g., corporation*) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

Initials _____

## FINANCIAL INFORMATION: ASSETS AND LIABILITIES

**REMINDER: "Assets" and "Liabilities" include <u>ALL</u> assets and liabilities, located within the United States or elsewhere, whether held individually or jointly.**

**<u>Item 12.</u>          Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents. The term "cash" includes currency and uncashed checks.

Cash on Hand  $_____          Cash Held For Your Benefit  $_____

| <u>Name on Account</u> | <u>Name & Address of Financial Institution</u> | <u>Account No.</u> | <u>Current Balance</u> |
|---|---|---|---|
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |

**<u>Item 13.</u>          U.S. Government Securities**

List all U.S. Government securities, including but not limited to, savings bonds, treasury bills, and treasury notes, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| <u>Name on Account</u> | <u>Type of Obligation</u> | <u>Security Amount</u> | <u>Maturity Date</u> |
|---|---|---|---|
| _____ | _____ | $_____ | _____ |
| _____ | _____ | $_____ | _____ |
| _____ | _____ | $_____ | _____ |

**<u>Item 14.</u>     Publicly Traded Securities and Loans Secured by Them**

Page 6

**Attachment A**

Initials _____

List all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

· Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

· Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

**Item 15.**      **Other Business Interests**

List all other business interests, including but not limited to, non-public corporations, subchapter-S corporations, limited liability corporations ("LLCs"), general or limited partnership interests, joint ventures, sole proprietorships, and oil and mineral leases, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

· Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

· Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

**Item 16.**      **Monetary Judgments or Settlements Owed to You, Your Spouse, or Your Dependents**

List all monetary judgments or settlements owed to you, your spouse, or your dependents.

· Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____

· Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____

**Item 17.**      **Other Amounts Owed to You, Your Spouse, or Your Dependents**

Page  7
Attachment A

Initials _____

List all other amounts owed to you, your spouse, or your dependents.

Debtor's Name, Address, & Telephone No. _____

Original Amount Owed $_____ Current Amount Owed $_____ Monthly Payment $_____

**Item 18.**        **Life Insurance Policies**

List all life insurance policies held by you, your spouse, or your dependents.

· Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____ Beneficiary _____ Face Value $_____

Policy No. _____ Loans Against Policy $_____ Surrender Value $_____

· Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____ Beneficiary _____ Face Value $_____

Policy No. _____ Loans Against Policy $_____ Surrender Value $_____

**Item 19.**        **Deferred Income Arrangements**

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, and other retirement accounts, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

· Name on Account _____ Type of Plan _____ Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____ Surrender Value $_____

· Name on Account _____ Type of Plan _____ Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____ Surrender Value $_____

**Item 20.**        **Personal Property**

List all personal property, by category, whether held for personal use or for investment, including but not limited to,

**Attachment A**                                                      Initials _____

furniture and household goods of value, computer equipment, electronics, coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| Property Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |

**Item 21.**      **Cars, Trucks, Motorcycles, Boats, Airplanes, and Other Vehicles**

List all cars, trucks, motorcycles, boats, airplanes, and other vehicles owned or operated by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

· Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

· Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

**Item 21.  Continued**

· Vehicle Type _____ Make _____ Model _____ Year _____

Attachment A

Initials _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

### Item 22.    Real Property

List all real estate held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

· Type of Property_____ Property's Location _____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address _____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

· Type of Property_____ Property's Location _____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address _____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

### Item 23.    Credit Cards

List each credit card held by you, your spouse, or your dependents.  Also list any other credit cards that you, your spouse, or your dependents use.

**Attachment A**

Initials _____

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance | Minimum Monthly Payment |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

**Item 24.**      **Taxes Payable**

List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependants.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |

**Item 25.**      **Judgments or Settlements Owed**

List all judgments or settlements owed by you, your spouse, or your dependents.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Page  11

**Attachment A**

Initials _____

**Item 26.**        **Other Loans and Liabilities**

List all other loans or liabilities in your, your spouse's, or your dependents' names.

·Name & Address of Lender/Creditor _____

Nature of Liability_____ Name(s) on Liability_____

Date of Liability_____ Amount Borrowed $_____ Current Balance $_____

Payment Amount $_____ Frequency of Payment_____

·Name & Address of Lender/Creditor _____

Nature of Liability_____ Name(s) on Liability_____

Date of Liability_____ Amount Borrowed $_____ Current Balance $_____

Payment Amount $_____ Frequency of Payment_____


## OTHER FINANCIAL INFORMATION


**Item 27.**        **Tax Returns**

List all federal tax returns that were filed during the last three years by or on behalf of you, your spouse, or your dependents. *Provide a copy of each signed tax return that was filed during the last three years.*

| Tax Year | Name(s) on Return | Refund Expected |
|---|---|---|
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |


**Item 28.**        **Applications for Credit**

List all applications for bank loans or other extensions of credit that you, your spouse, or your dependents have submitted within the last two years. *Provide a copy of each application, including all attachments.*

| Name(s) on Application | Name & Address of Lender |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |


**Item 29.**        **Trusts and Escrows**

Page  12                                                        Initials _____

Attachment A

List all funds or other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents. Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity. *Provide copies of all executed trust documents.*

| Trustee or Escrow Agent's Name & Address | Date Established | Grantor | Beneficiaries | Present Market Value of Assets |
|---|---|---|---|---|
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

**Item 30.      Transfers of Assets**

List each person to whom you have transferred, in the aggregate, more than $2,500 in funds or other assets during the previous three years by loan, gift, sale, or other transfer. For each such person, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (*e.g.*, Loan, Gift) |
|---|---|---|---|---|
| | $ | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |
| | $ | | | |

Page 13

**Attachment A**

Initials _____

## SUMMARY FINANCIAL SCHEDULES

**Item 31.**       **Combined Balance Sheet for You, Your Spouse, and Your Dependents**

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on Hand (Item 12) | $_____ | Credit Cards (Item 23) | $_____ |
| Cash in Financial Institutions (Item 12) | $_____ | Motor Vehicles - Liens (Item 21) | $_____ |
| U.S. Government Securities (Item 13) | $_____ | Real Property - Encumbrances (Item 22) | $_____ |
| Publicly Traded Securities (Item 14) | $_____ | Loans Against Publicly Traded Securities (Item 14) | $_____ |
| Other Business Interests (Item 15) | $_____ | Taxes Payable (Item 24) | $_____ |
| Judgments or Settlements Owed to You  (Item 16) | $_____ | Judgments or Settlements Owed (Item 25) | $_____ |
| Other Amounts Owed to You (Item 17) | $_____ | Other Loans and Liabilities (Item 26) | $_____ |
| Surrender Value of Life Insurance (Item 18) | $_____ | Other Liabilities (Itemize) | |
| Deferred Income Arrangements (Item 19) | $_____ | _____ | $_____ |
| Personal Property (Item 20) | $_____ | _____ | $_____ |
| Motor Vehicles (Item 21) | $_____ | _____ | $_____ |
| Real Property (Item 22) | $_____ | _____ | $_____ |
| Other Assets (Itemize) | | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| Total Assets | $_____ | Total Liabilities | $_____ |

Page  14

**Attachment A**

Initials _____

**Item 32.**     **Combined Average Monthly Income and Expenses for You, Your Spouse, and Your Dependents for the Last 6 Months**

Provide the average monthly income and expenses for you, your spouse, and your dependents for the last 6 months.  Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| INCOME | | EXPENSES | |
|---|---|---|---|
| Salary - After Taxes | $_____ | Mortgage Payments for Residence(s) | $_____ |
| Fees, Commissions, and Royalties | $_____ | Property Taxes for Residence(s) | $_____ |
| Interest | $_____ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $_____ |
| Dividends and Capital Gains | $_____ | Car or Other Vehicle Lease or Loan Payments | $_____ |
| Gross Rental Income | $_____ | Food Expenses | $_____ |
| Profits from Sole Proprietorships | $_____ | Clothing Expenses | $_____ |
| Distributions from Partnerships, S-Corporations, and LLCs | $_____ | Utilities | $_____ |
| Distributions from Trusts and Estates | $_____ | Medical Expenses, Including Insurance | $_____ |
| Distributions from Deferred Income Arrangements | $_____ | Other Insurance Premiums | $_____ |
| Social Security Payments | $_____ | Other Transportation Expenses | $_____ |
| Alimony/Child Support Received | $_____ | Other Household Expenses | $_____ |
| Gambling Income | $_____ | Other Expenses (Itemize) | |
| Other Income (Itemize) | | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| Total Income | $_____ | Total Expenses | $_____ |

Page 15

**Attachment A**

Initials _____

**ATTACHMENTS**

<u>**Item 33.**</u>        **Documents Attached to this Financial Statement**

List all documents that are being submitted with this financial statement.

<u>Item No. Document</u>                                <u>Description of Document</u>
<u>Relates To</u>

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

        I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____        _____
(Date)                                         Signature

Initials _____

**EXHIBIT  B**

# FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF CORPORATE DEFENDANT

**Instructions**:

1. Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2. In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

3. When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

4. Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number being continued.

5. Type or print legibly.

6. An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

Attachment B

## BACKGROUND INFORMATION

**Item 1.**          **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

E-Mail Address_____ Internet Home Page_____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address_____ From/Until_____

Address_____ From/Until_____

Address_____ From/Until_____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

**Item 2.**          **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status:  Active _____ Inactive _____ Dissolved _____

If Dissolved:  Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

**Item 3.**          **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

Page  2

Initials _____

Attachment B

**Item 4.**        **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

<u>Name & Address</u>                                          <u>% Owned</u>

_____          _____

_____          _____

_____          _____

_____          _____

**Item 5.**        **Board Members**

List all members of the corporation's Board of Directors.

<u>Name & Address</u>                          <u>% Owned</u>    <u>Term (From/Until)</u>

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

_____      _____    _____

**Item 6.**        **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

<u>Name & Address</u>                                          <u>% Owned</u>

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Page  3

**Attachment B**

Initials _____

**Item 7.**        **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

| Name & Address | Business Activities | % Owned |
|---|---|---|
| | | |
| | | |
| | | |

State which of these businesses, if any, has ever transacted business with the corporation _____

_____

**Item 8.**        **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

| Individual's Name | Business Name & Address | Business Activities | % Owned |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

State which of these businesses, if any, have ever transacted business with the corporation _____

**Item 9.**        **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date.  A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

| Name and Address | Relationship | Business Activities |
|---|---|---|
| | | |
| | | |
| | | |

Initials _____

**Item 10.**        **Outside Accountants**

List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|------|-----------|---------|---------|
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |

**Item 11.**        **Corporation's Recordkeeping**

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|-----------------------------------|------------------|
|                                   |                  |
|                                   |                  |
|                                   |                  |
|                                   |                  |

**Item 12.**        **Attorneys**

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|------|-----------|---------|
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |

Initials _____

**Item 13.**      **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Page  6

**Attachment B**

Initials _____

**Item 14.**        **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Initials _____

**Attachment B**

<u>**Item 15.**</u>        **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

<u>**Item 16.**</u>        **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation. *On a separate page, describe the contents of each box.*

| <u>Owner's Name</u> | <u>Name & Address of Depository Institution</u> | <u>Box No.</u> |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

<u>**FINANCIAL INFORMATION**</u>

**REMINDER:  When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

<u>**Item 17.**</u>        **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years. *Attach copies of all returns.*

| <u>Federal/ State/Both</u> | <u>Tax Year</u> | <u>Tax Due Federal</u> | <u>Tax Paid Federal</u> | <u>Tax Due State</u> | <u>Tax Paid State</u> | <u>Preparer's Name</u> |
|---|---|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |

<u>**Item 18.**</u>        **Financial Statements**

Page 8
**Attachment B**

Initials _____

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|---------------|-------------------------|---------------------|---------------------------|----------|
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |

**Item 19.**      **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 17 above, provide the following summary financial information.

|  | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|--|----------------------|------------|-------------|-------------|
| Gross Revenue | $ | $ | $ | $ |
| Expenses | $ | $ | $ | $ |
| Net Profit After Taxes | $ | $ | $ | $ |
| Payables | $ | | | |
| Receivables | $ | | | |

**Item 20.**      **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____ Cash Held for the Corporation's Benefit $_____

| Name & Address of Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|-----------------------------------------|------------------------|-------------|-----------------|
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |
|  |  |  | $ |

**Item 21.**      **Government Obligations and Publicly Traded Securities**

Initials _____

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation.  Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

**Item 22.**        **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

**Item 23.**        **Other Assets**

**Attachment B**

Initials _____

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

## Item 24.          Trusts and Escrows

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

## Item 25.          Monetary Judgments and Settlements Owed To the Corporation

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Page 11                                                                 Initials _____
**Attachment B**

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____


**Item 26.**        **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

**Item 27.**        **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Attachment B                                      Initials _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

**Item 28.**      **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| Name of Credit Card or Store | Names of Authorized Users and Positions Held |
|---|---|
| | |
| | |
| | |
| | |
| | |

**Item 29.**      **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

**Item 30.**      **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

Initials _____

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

**Item 31.**     **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |
| _____ | _____ | $_____ | _____ | _____ |

**Item 32.**     **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

Item No. Document Relates To     Description of Document

Page 14

**Attachment B**

Initials _____

_____   _____
_____   _____
_____   _____
_____   _____
_____   _____
_____   _____
_____   _____
_____   _____
_____   _____

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____
(Date)

_____
Signature

_____
Corporate Position

Page 15
**Attachment B**

Initials _____

**EXHIBIT C**

## <u>CONSENT TO RELEASE OF FINANCIAL RECORDS</u>

I, _____, do hereby direct any bank

or trust company at which I have a bank account of any kind or at which a corporation has a

bank account of any kind upon which I am authorized to draw, and its officers, employees and

agents, to disclose all information and deliver copies of all documents of every nature in your

possession or control which relate to the said bank accounts to any attorney of the Federal Trade

Commission, and to give evidence relevant thereto, in the matter of *FTC v. American Mortgage*

*Consulting Group, LLC, et al.*, now pending in the United States District Court for the Central

District of California, and this shall be irrevocable authority for so doing.  This direction is

intended to apply to the laws of countries other than the United States which restrict or prohibit

the disclosure of bank information without the consent of the holder of the account, and shall be

construed as consent with respect thereto, and the same shall apply to any of the bank accounts

for which I may be the relevant principal.  This consent form is being executed pursuant to court

order.

Dated: _____, 2012    Signed:  _____

Attachment C

**EXHIBIT D**

Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations



Electronic Code of Federal Regulations
e-CFR ™

## e-CFR Data is current as of September 7, 2012

## Title 12: Banks and Banking

Browse Previous | Browse Next

### PART 1015—MORTGAGE ASSISTANCE RELIEF SERVICES (REGULATION O)

**Section Contents**
§ 1015.1   Scope of regulations in this part.
§ 1015.2   Definitions.
§ 1015.3   Prohibited representations.
§ 1015.4   Disclosures required in commercial communications.
§ 1015.5   Prohibition on collection of advance payments and related disclosures.
§ 1015.6   Assisting and facilitating.
§ 1015.7   Exemptions.
§ 1015.8   Waiver not permitted.
§ 1015.9   Recordkeeping and compliance requirements.
§ 1015.10   Actions by states.
§ 1015.11   Severability.

**Authority:**   12 U.S.C. 5512, 5581; 15 U.S.C. 1638 note.

**Source:**   76 FR 78133, Dec. 16, 2011, unless otherwise noted.

### § 1015.1   Scope of regulations in this part.

 top

This part, known as Regulation O, is issued by the Bureau of Consumer Financial Protection to implement the 2009 Omnibus Appropriations Act, Public Law 111–8, section 626, 123 Stat. 524 (Mar. 11, 2009), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111–24, section 511, 123 Stat. 1734 (May 22, 2009), and as amended by the Dodd-Frank Wall Street Reform and Consumer Financial Protection Act of 2010, Public Law 111–203, section 1097, 124 Stat. 1376 (July 21, 2010). *This part applies to persons over which the Federal Trade Commission has jurisdiction under the Federal Trade Commission Act.*

### § 1015.2   Definitions.

 top

For the purposes of this part:

Attachment D

*Clear and prominent* means:

(1) In textual communications, the required disclosures shall be easily readable; in a high degree of contrast from the immediate background on which it appears; in the same languages that are substantially used in the commercial communication; in a format so that the disclosure is distinct from other text, such as inside a border; in a distinct type style, such as bold; parallel to the base of the commercial communication, and, except as otherwise provided in this rule, each letter of the disclosure shall be, at a minimum, the larger of 12-point type or one-half the size of the largest letter or numeral used in the name of the advertised Web site or telephone number to which consumers are referred to receive information relating to any mortgage assistance relief service. Textual communications include any communications in a written or printed form such as print publications or words displayed on the screen of a computer;

(2) In communications disseminated orally or through audible means, such as radio or streaming audio, the required disclosures shall be delivered in a slow and deliberate manner and in a reasonably understandable volume and pitch;

(3) In communications disseminated through video means, such as television or streaming video, the required disclosures shall appear simultaneously in the audio and visual parts of the commercial communication and be delivered in a manner consistent with paragraphs (1) and (2) of this definition. The visual disclosure shall be at least four percent of the vertical picture or screen height and appear for the duration of the oral disclosure;

(4) In communications made through interactive media, such as the internet, online services, and software, the required disclosures shall:

(i) Be consistent with paragraphs (1) through (3) of this definition;

(ii) Be made on, or immediately prior to, the page on which the consumer takes any action to incur any financial obligation;

(iii) Be unavoidable, *i.e.,* visible to consumers without requiring them to scroll down a Web page; and

(iv) Appear in type at least the same size as the largest character of the advertisement;

(5) In all instances, the required disclosures shall be presented in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication of them; and

(6) For program-length television, radio, or internet-based multimedia commercial communications, the required disclosures shall be made at the beginning, near the middle, and at the end of the commercial communication.

*Client trust account* means a separate account created by a licensed attorney for the purpose of holding client funds, which is:

(1) Maintained in compliance with all applicable state laws and regulations, including licensing regulations; and

(2) Located in the state where the attorney's office is located, or elsewhere in the United States with the consent of the consumer on whose behalf the funds are held.

*Commercial communication* means any written or oral statement, illustration, or depiction, whether in English or any other language, that is designed to effect a sale or create interest in purchasing any service, plan, or program, whether it appears on or in a label, package, package insert, radio, television, cable television, brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, film, slide, audio program transmitted over a telephone system, telemarketing script, onhold script, upsell script, training materials provided to telemarketing firms, program-length commercial ("infomercial"), the internet, cellular network, or any other medium. Promotional materials and items and Web pages are included in the term "commercial communication."

(1) *General Commercial Communication* means a commercial communication that occurs prior to the

Attachment D

consumer agreeing to permit the provider to seek offers of mortgage assistance relief on behalf of the consumer, or otherwise agreeing to use the mortgage assistance relief service, and that is not directed at a specific consumer.

(2) *Consumer-Specific Commercial Communication* means a commercial communication that occurs prior to the consumer agreeing to permit the provider to seek offers of mortgage assistance relief on behalf of the consumer, or otherwise agreeing to use the mortgage assistance relief service, and that is directed at a specific consumer.

*Consumer* means any natural person who is obligated under any loan secured by a dwelling.

*Dwelling* means a residential structure containing four or fewer units, whether or not that structure is attached to real property, that is primarily for personal, family, or household purposes. The term includes any of the following if used as a residence: An individual condominium unit, cooperative unit, mobile home, manufactured home, or trailer.

*Dwelling loan* means any loan secured by a dwelling, and any associated deed of trust or mortgage.

*Dwelling Loan Holder* means any individual or entity who holds the dwelling loan that is the subject of the offer to provide mortgage assistance relief services.

*Material* means likely to affect a consumer's choice of, or conduct regarding, any mortgage assistance relief service.

*Mortgage Assistance Relief Service* means any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

(1) Stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

(2) Negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

(3) Obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

(4) Negotiating, obtaining, or arranging any extension of the period of time within which the consumer may:

(i) Cure his or her default on a dwelling loan,

(ii) Reinstate his or her dwelling loan,

(iii) Redeem a dwelling, or

(iv) Exercise any right to reinstate a dwelling loan or redeem a dwelling;

(5) Obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

(6) Negotiating, obtaining or arranging:

(i) A short sale of a dwelling,

(ii) A deed-in-lieu of foreclosure, or

(iii) Any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder.

**Attachment D**

*Mortgage Assistance Relief Service Provider* or *Provider* means any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service. This term does not include:

(1) The dwelling loan holder, or any agent or contractor of such individual or entity.

(2) The servicer of a dwelling loan, or any agent or contractor of such individual or entity.

*Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity, except to the extent that any person is specifically excluded from the Federal Trade Commission's jurisdiction pursuant to 15 U.S.C. 44 and 45(a)(2).

*Servicer* means the individual or entity responsible for:

(1) Receiving any scheduled periodic payments from a consumer pursuant to the terms of the dwelling loan that is the subject of the offer to provide mortgage assistance relief services, including amounts for escrow accounts under section 10 of the Real Estate Settlement Procedures Act (12 U.S.C. 2609); and

(2) Making the payments of principal and interest and such other payments with respect to the amounts received from the consumer as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

*Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of any service, by use of one or more telephones and which involves more than one interstate telephone call.

### § 1015.3   Prohibited representations.

top

It is a violation of this rule for any mortgage assistance relief service provider to engage in the following conduct:

(a) Representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer.

(b) Misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including but not limited to:

(1) The likelihood of negotiating, obtaining, or arranging any represented service or result, such as those set forth in the definition of *Mortgage Assistance Relief Service* in §1015.2;

(2) The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result, such as those set forth in the definition of *Mortgage Assistance Relief Service* in §1015.2;

(3) That a mortgage assistance relief service is affiliated with, endorsed or approved by, or otherwise associated with:

(i) The United States government,

(ii) Any governmental homeowner assistance plan,

(iii) Any Federal, State, or local government agency, unit, or department,

(iv) Any nonprofit housing counselor agency or program,

(v) The maker, holder, or servicer of the consumer's dwelling loan, or

Attachment D

(vi) Any other individual, entity, or program;

(4) The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan;

(5) The terms or conditions of the consumer's dwelling loan, including but not limited to the amount of debt owed;

(6) The terms or conditions of any refund, cancellation, exchange, or repurchase policy for a mortgage assistance relief service, including but not limited to the likelihood of obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted, for a mortgage assistance relief service;

(7) That the mortgage assistance relief service provider has completed the represented services or has a right to claim, demand, charge, collect, or receive payment or other consideration;

(8) That the consumer will receive legal representation;

(9) The availability, performance, cost, or characteristics of any alternative to for-profit mortgage assistance relief services through which the consumer can obtain mortgage assistance relief, including negotiating directly with the dwelling loan holder or servicer, or using any nonprofit housing counselor agency or program;

(10) The amount of money or the percentage of the debt amount that a consumer may save by using the mortgage assistance relief service;

(11) The total cost to purchase the mortgage assistance relief service; or

(12) The terms, conditions, or limitations of any offer of mortgage assistance relief the provider obtains from the consumer's dwelling loan holder or servicer, including the time period in which the consumer must decide to accept the offer;

(c) Making a representation, expressly or by implication, about the benefits, performance, or efficacy of any mortgage assistance relief service unless, at the time such representation is made, the provider possesses and relies upon competent and reliable evidence that substantiates that the representation is true. For the purposes of this paragraph, *competent and reliable evidence* means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by individuals qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

### § 1015.4  Disclosures required in commercial communications.

 top

It is a violation of this rule for any mortgage assistance relief service provider to engage in the following conduct:

(a) *Disclosures in All General Commercial Communications* —Failing to place the following statements in every general commercial communication for any mortgage assistance relief service:

(1) "(Name of company) is not associated with the government, and our service is not approved by the government or your lender."

(2) In cases where the mortgage assistance relief service provider has represented, expressly or by implication, that consumers will receive any service or result set forth in paragraphs (2) through (6) of the definition of *Mortgage Assistance Relief Service* in §1015.2, "Even if you accept this offer and use our service, your lender may not agree to change your loan."

(3) The disclosures required by this paragraph must be made in a clear and prominent manner, and—

Attachment D

(i) In textual communications the disclosures must appear together and be preceded by the heading "IMPORTANT NOTICE," which must be in bold face font that is two point-type larger than the font size of the required disclosures; and

(ii) In communications disseminated orally or through audible means, wholly or in part, the audio component of the required disclosures must be preceded by the statement "Before using this service, consider the following information."

(b) *Disclosures in All Consumer-Specific Commercial Communications* —Failing to disclose the following information in every consumer-specific commercial communication for any mortgage assistance relief service:

(1) "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us (insert amount or method for calculating the amount) for our services." For the purposes of this paragraph (b)(1), the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the sales offer, including, but not limited to, all fees and charges.

(2) "(Name of company) is not associated with the government, and our service is not approved by the government or your lender."

(3) In cases where the mortgage assistance relief service provider has represented, expressly or by implication, that consumers will receive any service or result set forth in paragraphs (2) through (6) of the definition of *Mortgage Assistance Relief Service* in §1015.2, "Even if you accept this offer and use our service, your lender may not agree to change your loan."

(4) The disclosures required by this paragraph must be made in a clear and prominent manner, and—

(i) In textual communications the disclosures must appear together and be preceded by the heading "IMPORTANT NOTICE," which must be in bold face font that is two point-type larger than the font size of the required disclosures; and

(ii) In communications disseminated orally or through audible means, wholly or in part, the audio component of the required disclosures must be preceded by the statement "Before using this service, consider the following information" and, in telephone communications, must be made at the beginning of the call.

(c) *Disclosures in All General Commercial Communications, Consumer-Specific Commercial Communications, and Other Communications* —In cases where the mortgage assistance relief service provider has represented, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, failing to disclose, clearly and prominently, and in close proximity to any such representation that "If you stop paying your mortgage, you could lose your home and damage your credit rating."

### § 1015.5  Prohibition on collection of advance payments and related disclosures.

 top

It is a violation of this rule for any mortgage assistance relief service provider to:

(a) Request or receive payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer;

(b) Fail to disclose, at the time the mortgage assistance relief service provider furnishes the consumer with the written agreement specified in paragraph (a) of this section, the following information: "This is an offer of mortgage assistance we obtained from your lender [or servicer]. You may accept or reject the offer. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [same amount as disclosed pursuant to §1015.4(b)(1)] for our services." The disclosure required by this

Attachment D

Case 8:12-cv-01561-DOC-JPR   Document 30   Filed 10/01/12   Page 97 of 100   Page ID
#:1130
Electronic Code of Federal Regulations:                                    Page 7 of 9

paragraph must be made in a clear and prominent manner, on a separate written page, and preceded by the heading: "IMPORTANT NOTICE: Before buying this service, consider the following information." The heading must be in bold face font that is two point-type larger than the font size of the required disclosure; or

(c)(1) Fail to provide, at the time the mortgage assistance relief service provider furnishes the consumer with the written agreement specified in paragraph (a) of this section, a notice from the consumer's dwelling loan holder or servicer that describes all material differences between the terms, conditions, and limitations associated with the consumer's current mortgage loan and the terms, conditions, and limitations associated with the consumer's mortgage loan if he or she accepts the dwelling loan holder's or servicer's offer, including but not limited to differences in the loan's:

(i) Principal balance;

(ii) Contract interest rate, including the maximum rate and any adjustable rates, if applicable;

(iii) Amount and number of the consumer's scheduled periodic payments on the loan;

(iv) Monthly amounts owed for principal, interest, taxes, and any mortgage insurance on the loan;

(v) Amount of any delinquent payments owing or outstanding;

(vi) Assessed fees or penalties; and

(vii) Term.

(2) The notice must be made in a clear and prominent manner, on a separate written page, and preceded by heading: "IMPORTANT INFORMATION FROM YOUR [name of lender or servicer] ABOUT THIS OFFER." The heading must be in bold face font that is two-point-type larger than the font size of the required disclosure.

(d) Fail to disclose in the notice specified in paragraph (c) of this section, in cases where the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer is a trial mortgage loan modification, the terms, conditions, and limitations of this offer, including but not limited to:

(1) The fact that the consumer may not qualify for a permanent mortgage loan modification; and

(2) The likely amount of the scheduled periodic payments and any arrears, payments, or fees that the consumer would owe in failing to qualify.

### § 1015.6  Assisting and facilitating.

 top

It is a violation of this rule for a person to provide substantial assistance or support to any mortgage assistance relief service provider when that person knows or consciously avoids knowing that the provider is engaged in any act or practice that violates this rule.

### § 1015.7  Exemptions.

 top

(a) An attorney is exempt from this part, with the exception of §1015.5, if the attorney:

(1) Provides mortgage assistance relief services as part of the practice of law;

(2) Is licensed to practice law in the state in which the consumer for whom the attorney is providing

Attachment D

mortgage assistance relief services resides or in which the consumer's dwelling is located; and

(3) Complies with state laws and regulations that cover the same type of conduct the rule requires.

(b) An attorney who is exempt pursuant to paragraph (a) of this section is also exempt from §1015.5 if the attorney:

(1) Deposits any funds received from the consumer prior to performing legal services in a client trust account; and

(2) Complies with all state laws and regulations, including licensing regulations, applicable to client trust accounts.

### § 1015.8  Waiver not permitted.

top

It is a violation of this rule for any person to obtain, or attempt to obtain, a waiver from any consumer of any protection provided by or any right of the consumer under this rule.

### § 1015.9  Recordkeeping and compliance requirements.

top

(a) Any mortgage assistance relief provider must keep, for a period of twenty-four (24) months from the date the record is created, the following records:

(1) All contracts or other agreements between the provider and any consumer for any mortgage assistance relief service;

(2) Copies of all written communications between the provider and any consumer occurring prior to the date on which the consumer entered into an agreement with the provider for any mortgage assistance relief service;

(3) Copies of all documents or telephone recordings created in connection with compliance with paragraph (b) of this section;

(4) All consumer files containing the names, phone numbers, dollar amounts paid, and descriptions of mortgage assistance relief services purchased, to the extent the mortgage assistance relief service provider keeps such information in the ordinary course of business;

(5) Copies of all materially different sales scripts, training materials, commercial communications, or other marketing materials, including Web sites and weblogs, for any mortgage assistance relief service; and

(6) Copies of the documentation provided to the consumer as specified in §1015.5 of this rule;

(b) A mortgage assistance relief service provider also must:

(1) Take reasonable steps sufficient to monitor and ensure that all employees and independent contractors comply with this rule. Such steps shall include the monitoring of communications directed at specific consumers, and shall also include, at a minimum, the following:

(i) If the mortgage assistance relief service provider is engaged in the telemarketing of mortgage assistance relief services, performing random, blind recording and testing of the oral representations made by individuals engaged in sales or other customer service functions;

(ii) Establishing a procedure for receiving and responding to all consumer complaints; and

Attachment D

(iii) Ascertaining the number and nature of consumer complaints regarding transactions in which all employees and independent contractors are involved;

(2) Investigate promptly and fully each consumer complaint received;

(3) Take corrective action with respect to any employee or contractor whom the mortgage assistance relief service provider determines is not complying with this rule, which may include training, disciplining, or terminating such individual; and

(4) Maintain any information and material necessary to demonstrate its compliance with paragraphs (b) (1) through (3) of this section.

(c) A mortgage assistance relief provider may keep the records required by paragraphs (a) and (b) of this section in any form, and in the same manner, format, or place as it keeps such records in the ordinary course of business.

(d) It is a violation of this rule for a mortgage assistance relief service provider not to comply with this section.

### § 1015.10   Actions by states.

 top

Any attorney general or other officer of a state authorized by the state to bring an action under this part may do so pursuant to section 626(b) of the 2009 Omnibus Appropriations Act, Public Law 111–8, section 626, 123 Stat. 524 (Mar. 11, 2009), as amended by Public Law 111–24, section 511, 123 Stat. 1734 (May 22, 2009), and as amended by Public Law 111–203, section 1097, 124 Stat. 2102 (July 21, 2010).

### § 1015.11   Severability.

 top

The provisions of this rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Bureau of Consumer Financial Protection's intention that the remaining provisions shall continue in effect.

Browse Previous | Browse Next

---

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Section 508 / Accessibility

Attachment D

CERTIFICATE OF SERVICE

1

2   I, Maxine R. Stansell, certify as follows:

3   I am over the age of 18 and am employed by the Federal Trade Commission.

4   My business address is 915 Second Ave., Ste. 2896, Seattle Washington 98174. On

5   the date indicated below, I caused to be served the foregoing NOTICE OF

6   LODGING and PROPOSED PRELIMINARY INJUNCTION WITH ASSET FREEZE,

7   APPOINTMENT OF TEMPORARY RECEIVER, AND OTHER EQUITABLE RELIEF via

8   email by consent to on the following interested parties:

9

10  Attorney for Defendants:               Temporary Receiver:

11  Marc Y. Lazo                           Brick Kane

12  BP Law Group, LLP                      Kenton Johnson

13  4695 MacArthur Court, Ste. 1100        Robb Evans & Associates, LLC,

14  Newport Beach, CA 92660                11450 Sheldon St.

15  mlazo@bplawgroup.com                   Sun Valley, CA 91352

16                                         brick_kane@robbevans.com

17                                         kenton.johnson@robbevans.com

18

19  I declare under penalty of perjury that the foregoing is true and correct.

20

21  Dated: September 27, 2012              Maxine R. Stansell

22                                         MAXINE R. STANSELL

23

24

25

26

27

28

Certificate of Service                    Notice of Lodging/Proposed Preliminary Injunction